[Civ. No. 3304. Third Appellate District.—December 28, 1927.]

A. M. DREW et al., Appellants, v. LINDSAY NATIONAL BANK (a National Banking Corporation) et al., Respondents.

Feemster & Cleary for Appellants.

D. E. Perkins for Respondents.

FINCH, P. J.—August 1, 1918, the plaintiffs and R. M. Carr entered into a written contract with defendant Mennillo, by the terms of which Mennillo agreed to purchase the olives grown by the other parties to the contract during the succeeding five years at an agreed price per ton therefor. The contract contained the following clause:

"It is understood and agreed that this contract is not to be binding upon the said first parties until it is endorsed by some person, or firm, or corporation as security for the carrying out of the covenants and conditions thereof by the said second party, or that a satisfactory surety bond is furnished that the said second party will carry out all of the covenants and conditions of the said lease and the said contract."

In pursuance of the provisions of the clause quoted and for the purpose of giving effect to the contract, Mennillo caused the following indorsement upon the contract to be executed by the Santa Barbara Olive Company, B. J. Ruddle and C. R. Mennillo:

"The undersigned for and in consideration of the sum of one dollar and other valuable considerations to —— running does hereby endorse this contract and guarantee the said second party will carry out all the terms, covenants and conditions thereof during the running of the lease and contract."

At the time of the execution of the contract first mentioned, the Lindsay Ripe Olive Company leased its olive packing-house and equipment to Mennillo for a term of five years at the semi-annual rental of $390, payable in advance on the "first day of August and the first day of February" of each year during the term. The lease contained the following provisions:

"It is understood . . . that the said second party will use the said building for the processing of olives purchased from the members and stockholders of the said first party according to the terms and conditions of the agreement of even date herewith and hereto attached and made a part hereof, and that the said olives of the said stockholders of this corporation aforesaid shall have the first right to delivery and acceptance at such packing house according to the aforesaid agreement. It is understood, however, that the said second party shall have the right to purchase other olives from other parties on such terms and conditions as he may make and that the same shall be processed in the said house and that he may also use the said house for the packing of fruit and vegetables when not needed for olive packing."

Neither party was able to produce the lease at the trial, but the court found, from conflicting evidence, "that by the terms of said lease it was agreed that in case said F. A. Mennillo did not pay the annual rental at the time in the lease provided, that the lessors by giving thirty days notice in writing of such default, should have the right to re-enter said premises and remove all persons therefrom and repossess and enjoy said property."

September 18, 1918, the Lindsay Ripe Olive Company, as party of the first part, and defendant Mennillo, as party of the second part, executed an instrument, which was attached to the contract of August 1, 1918, between plaintiffs and Mennillo, and which reads as follows:

"This *addendum* made this 25th day of September, 1918, to that certain contract dated August 1, 1918, made by the Lindsay Ripe Olive Company, first party, with F. A. Mennillo, second party, wherein the said first party agrees to lease a certain olive packing house in the city of Lindsay to the said second party for a term of five years, and whereas the said second party was to give a bond or endorsers to the contract sufficient to satisfy the said first party that the said second party would carry out all the terms in accordance with the conditions of said agreement and of said lease, and whereas the said second party has failed to give such bond. It is now agreed that the said second party will deposit with the Lindsay National Bank in the form of a certificate of deposit, and that the said certificate of deposit shall remain in the possession of the said Lindsay National Bank during the running of the agreement, or to such subsequent time as shall hereafter be agreed upon between the parties hereto, the said sum of Twenty-five Hundred ($2500.00) Dollars, to be held as security by the said bank for the said first party to said agreement, that the said second party will carry out the covenants and conditions of the lease and the agreement required as aforesaid. . . . Should the said second party fail, neglect or refuse to carry out the provisions and conditions of the aforesaid contract the said sum of $2500.00 shall be delivered to the said first party, or such proportion thereof as may be necessary to meet the liquidated damages incurred by any breach of said contract."

The sum of $2,500 was deposited in compliance with the terms of the agreement. Mennillo went into possession of the packing-house and performed the covenants of the lease and of his contract to purchase plaintiffs' olives until the early part of the year 1920, when he disappeared and apparently abandoned the packing-house and his business at Lindsay. It does not appear that he thereafter, at any time, asserted any right to use the premises or made any claim thereto. At the time of his departure he was heavily indebted to the defendant bank. He assigned his stock of processed olives to the bank and the bank thereafter sold the same and applied the proceeds thereof upon the indebtedness. After such application, however, his remaining indebtedness to the bank was in excess of $2,500. In an action thereafter brought, the bank recovered judgment against Mennillo for the balance of such indebtedness and caused the money deposited as aforesaid to be seized under a writ of execution and applied in partial satisfaction of the judgment.

About September 1, 1920, the Lindsay Ripe Olive Company re-entered into possession of the packing-house. During the remainder of the time covered by the lease and the sales contract, the plaintiff and Carr were unable to sell their olives for the prices specified in the contract, and they sold them at lower prices. The court found that on September 1, 1920, Mennillo was in default in the payment of rent in the sum of $390. The uncontradicted evidence shows that he was in default in a larger sum. Drew testified that the sum of $800 was then due as rent. This testimony was doubtless based on his previous testimony that the lease provided for a monthly rental of $100. He later testified that the lease provided for a semi-annual rental of $390. A simple computation, based on such testimony, shows that the unpaid rental on September 1, 1920, amounted to $520. The plaintiffs and Carr and the Lindsay Ripe Olive Company made demand on the defendant bank that said sum of $2,500, deposited with the bank, be paid over to them, but the bank refused to pay any part thereof to any of them. After making such demand, Carr and the Lindsay Ripe Olive Company "assigned and transferred unto plaintiffs herein all of their claim to and all

of their right, title and interest in the said $2,500." Thereafter this suit was brought to recover the amount of the deposit. Judgment was entered in favor of defendants for costs of suit and the plaintiffs have appealed.

■ Appellants contend that the deposit of $2,500 with the defendant bank was made as security for the performance by Mennillo of the terms of the sales contract as well as those of the lease. The *addendum* contract of September 25, 1918, is so certain and explicit in its terms as to furnish a complete answer to this contention. It is true that the plaintiffs and Carr owned about two-thirds of the capital stock of the Lindsay Ripe Olive Company at the time the lease and other contracts were executed, but it is not perceived that that fact is at all material. Mennillo's contract with the corporation and that with the plaintiffs and Carr were independent transactions. ■ During the progress of the trial the plaintiffs asked leave to amend their third amended complaint by alleging "that what was intended by the *addendum* was to make it a part of the purchase agreement"; that the failure to so provide in the *addendum* contract was due to the mutual mistake of the parties thereto. In asking leave to so amend counsel for the plaintiffs stated that the granting of the request "will . . . necessitate the continuance of the case, and we are perfectly willing to take care of any expenses that have been incurred up to this time as a condition to the continuance." The court denied the motion. The trial was commenced in March, 1925. The original complaint, filed January 4, 1924, set forth the *addendum* contract in full. The plaintiffs were permitted to file three amended complaints. Under the circumstances stated it was not an abuse of discretion to deny leave to file a fourth amended complaint. Further, the plaintiffs were not parties to the *addendum* contract. "While a court of equity will reform contracts under many varying circumstances, still it has no power to make a new contract. . . . A court of equity can neither add additional parties nor substitute other parties for those already appearing upon the face of the writing." (*Mabb* v. *Merriam*, 129 Cal. 663, 664 [62 Pac. 212]; *Wilson* v. *Shea*, 194 Cal. 653, 657 [229 Pac. 945].)

■ As stated, the court found that on September 1, 1920, Mennillo was "in default in the payment of said rent to the extent of $390," while the uncontradicted evidence shows that he was then in default in the sum of $520. The complaint alleges that the rent was unpaid for the year 1920, and the answer denies that allegation. The burden was on defendants to prove payment of such rental if made. (20 Cal. Jur. 952.) It must be taken as established, therefore, that Mennillo paid no rent for the year 1920.

■ The court found that plaintiffs' cause of action for such rent was "barred by the provisions of subdivision 1 of section 337 of the Code of Civil Procedure," to the effect that an action upon a contract in writing must be commenced within four years after the cause of action accrued. The transcript on appeal does not show when the action was commenced, but the third amended complaint, upon which the action was tried, was filed March 27, 1925, more than four years after the last payment of rent to which the lessor was entitled became due, the lessor, as stated, having terminated the lease about September 1, 1920. The original complaint and certified copies of the first and second amended complaints have been forwarded to the clerk of this court, but an examination of the allegations thereof shows that the original complaint and the first amended complaint were based solely on Mennillo's alleged breach of his agreement to purchase the plaintiffs' olives. In the second amended complaint, filed December 15, 1924, the plaintiffs, for the first time, alleged that Mennillo had failed to pay rent, the allegation therein being "that said defendant in the year 1920 . . . wholly failed and refused to pay the rental under said lease." The finding, therefore, that plaintiffs' cause of action was barred is fully sustained by the evidence, and since this finding is decisive of the case, it is unnecessary to consider appellants' contention that the court erred in finding that they conspired together to oust Mennillo from the premises further than to say that no evidence has been discovered which tends to support that finding.

The judgment is affirmed.

Plummer, J., and Hart, J., concurred.